UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **DUSTIN MCMILLAN** | **CIVIL ACTION NO. 20-0743** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **SHERIFF JAY RUSSELL, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Plaintiff Dustin McMillan, a pre-trial detainee at Ouachita Parish Correctional Center ("OCC") proceeding pro se and in forma pauperis, filed this proceeding on approximately June 9, 2020, under 42 U.S.C. § 1983. He names the following defendants in their individual and official capacities: Sheriff Jay Russell, Warden Pat Johnson, and Lieutenant Donna Norman.[1] For reasons below, the Court should retain Plaintiff's conditions-of-confinement claims against Sheriff Jay Russell and Warden Pat Johnson, but the Court should dismiss Plaintiff's claims against Lieutenant Donna Norman.

**Background**

Plaintiff alleges that he suffers from a rash/split between his toes which caused a discharge of blood and pus. [doc. # 1, pp. 3, 6]. Lieutenant Norman and Nurse George evaluated him on September 11, 2019, after he complained that his feet were "badly irritated," and he received Tolfanate antifungal cream. *Id.* at 6. The "issue was ongoing yet [Plaintiff] tolerated it." *Id.* He "continued to purchase the same medication via commissary." He received "follow-up" care on either February 3 or 5, 2020, for a "bad fungus problem . . . ongoing since"

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

September 2019, and he was prescribed Bactrim, Diflucan, IBU 800, and Lamisil cream. [doc. #s 1, p. 6; 5, p. 2]. He suggests that the medications have not "solved [the] issue." [doc. # 1, p. 3].

On March 2, 2020, Plaintiff "notified medical that he was still having issues with the fungus on his feet." [doc. # 5, p. 2]. On March 4, 2020, he received "a refill for the Lamisil cream." [doc. # 1, p. 6]. However, he claims that this medication "is only a temporary solution because the issue has yet to be resolved." *Id.* He requested "a refill on all medications" on May 27, 2020, because his feet were "breaking out again . . . ." [doc. # 5, p. 2].

Plaintiff alleges that, due to poor drainage and ventilation in the showers at OCC, mold, mildew, maggots, and worms are present. *Id.* at 3, 6. He notified "medical that the showers had improper drainage" and that fruit flies were "ever present." *Id.* at 6. "Medical then notified maintenance about this." *Id.* "Warden Pat Johnson stated he would resolve [the] issue." *Id.* at 3. Maintenance sprayed the showers with bleach daily. *Id.* at 3, 6. On May 27, 2020, Plaintiff asked Warden Johnson to address "the drainage problems with the showers again." *Id.*

Plaintiff faults Sheriff Jay Russell because he is "the overseer of the jail and responsible for all inmates housed in [OCC]." *Id.* at 7.

Plaintiff faults Lieutenant Norman, the "supervisor of the medical staff," alleging that Norman "knows that the showers at OCC are causing serious health issues but has not taken reasonable measures to intervene, to protect Plaintiff from receiving harm from the poor conditions of confinement. [sic]." [doc. # 5, p. 2].

Plaintiff seeks injunctive relief, punitive damages, and compensation for his injuries, pain, and suffering. [doc. # 1, p. 4].

## **Law and Analysis**

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] See *Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."


*Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was

committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Medical Care**

A plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); see *Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation

marks and quoted sources omitted); see *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

Here, Plaintiff appears to fault all defendants for failing to provide adequate medical care. Distilled, however, he simply disagrees with the treatment he received. See *Alton*, 168 F.3d at 201 ("Actions and decisions by officials that are merely . . . ineffective . . . do not amount to deliberate indifference . . . ."). While he suggests that he should have received better or more effective care, his disagreement or dissatisfaction with the care he received falls short of establishing deliberate indifference and does not, consequently, state a plausible claim. See *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (citing *Young v. Gray*, 560 F.2d 201, 201 (5th Cir. 1977)); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir. 1985).[3]

Plaintiff also claims that Lieutenant Norman, "the supervisor of the medical staff and coordinator of all healthcare protocols . . . at OCC[,]" knew that the conditions of the showers at OCC were harming him yet failed to intervene or protect him from the conditions. [doc. # 5, p.

---

[3] See also *Frazier*, 707 F. App'x at 824 (finding no deliberate indifference where medical staff responded to the plaintiff's complaints and provided consistent care and medication, even though the plaintiff disagreed with the extent and form of treatment); *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992) (finding that an inmate received adequate care, even though the treatment may not have been the best, and that any deficiencies in treatment were minimal; moreover, the plaintiff's continuing pain, in and of itself, did not demonstrate that a constitutional violation occurred).

6

2]. While Plaintiff alleges that the shower conditions caused his injuries, the undersigned does not discern a claim for inadequate medical care.[4]

Even to the extent the preceding claim can be construed as one of lack of medical care—as opposed to seeking relief for the harm to his health resulting solely from the shower conditions—he does not state a plausible claim. Liberally construed, he alleges that Norman knew he faced a substantial risk of serious harm. However, he does not allege that Norman disregarded that risk by failing to take reasonable measures to abate it. He does not allege, for instance, that Norman refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.

The Court should dismiss these claims.

### 3. Lieutenant Norman's Involvement

Plaintiff seeks relief from Sheriff Jay Russell, Warden Pat Johnson, and Lieutenant Donna Norman for the injuries he suffered as a result of the conditions (poor drainage and poor ventilation) in the showers. Considering the duration of the conditions and that they caused Plaintiff to suffer the ailments listed above, the Court should retain this claim against Sheriff Russell and Warden Pat Johnson.[5] However, the Court should dismiss this claim against Norman.

---

[4] The undersigned will address this particular allegation below.

[5] See, e.g. *Smith v. Leonard*, 244 F. App'x 583, 584 (5th Cir. 2007) (finding, where a prisoner suffered headaches, sinus problems, trouble breathing, blurred vision, irritated eyes, and fatigue allegedly as result of toxic mold, that the plaintiff "alleged facts sufficient to preclude a determination that his mold claim is frivolous or fails to state a claim.").

Section 1983 provides in relevant part: "Every person who . . . *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (emphasis added). If a person is not personally involved, then, *a fortiori*, he cannot subject another to, or cause, a deprivation of constitutional rights. See *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."). "A plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation." *James v. Texas Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008).

Here, Plaintiff alleges that Norman "knows that the showers at OCC are causing serious health issues, but has not taken reasonable measures to intervene, to protect Plaintiff from receiving harm from the poor conditions of confinement." [doc. # 5, p. 2]. He adds: "Norman knows that these showers are causing serious and repetitive health problems but has not taken reasonable measures to ensure that my health and safety is secure. Instead Lt. Norman has turned a blind eye to these living conditions and allowed my health to continue to deteriorate, while on her watch, and knowing that this problem has not been resolved, making Lt. Norman liable to showing a deliberate indifference. [sic]." *Id.* at 2-3.

Plaintiff, however, does not allege that Norman was personally involved in confining him under, failing to remove him from, creating, or failing to ameliorate the allegedly offending conditions.[6] Again, the Court should dismiss this claim against Norman.

---

[6] Plaintiff does allege that he "asked the medical staff to relay this problem to the Warden . . . ." However, he does not allege that Norman failed to relay his concerns to someone with authority to remediate, or remove him from, the offending conditions.

**Recommendation**

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff Dustin McMillan's claims against Lieutenant Donna Norman be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 13th day of July, 2020.

Karen L. Hayes
United States Magistrate Judge

9